UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDRE CALWISE

     Petitioner,                     CASE NO. 06-CV-14996
v.                                  HONORABLE PAUL D. BORMAN
                                       UNITED STATES DISTRICT JUDGE
CINDI CURTIN,

     Respondent,
_____/

## OPINION AND ORDER DENYING: (1) THE PETITION FOR WRIT OF HABEAS CORPUS; (2) A CERTIFICATE OF APPEALABILITY; AND (3) LEAVE TO APPEAL IN FORMA PAUPERIS

Andre Calwise, ("Petitioner"), presently confined at the Macomb Correctional Facility in New Haven, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his conviction for first-degree felony murder, M.C.L.A. § 750.316; M.S.A. § 28.548; and possession of a firearm in the commission of a felony, M.C.L.A. § 750.227b; M.S.A. § 28.424(2). For the reasons stated below, the application for a writ of habeas corpus is DISMISSED WITH PREJUDICE.

## I. BACKGROUND

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court.

Petitioner has provided a detailed statement of facts in his petition for writ of habeas corpus.[1] Respondent has not provided a counter-statement of facts in its answer to the petition. The Court will therefore accept the factual allegations contained within the habeas petition insofar as they are

---

[1] *See* Brief in Support of the Petition for Writ of Habeas Corpus, pp. 1-15 [This Court's Dkt Entry # 1].

1

consistent with the record, because the respondent has not disputed them. *See Dickens v. Jones,* 203 F. Supp. 2d 354, 360 (E.D. Mich. 2002) ("When a state's return to a habeas corpus petition fails to dispute the factual allegations contained within the habeas petition, it essentially admits these allegations"). Because the facts of this case have been described extensively by Petitioner, they need not be repeated here in their entirety. Therefore, only a brief overview of the facts is required. *See Nevers v. Killinger,* 990 F. Supp. 844, 847 (E.D. Mich. 1997).

Petitioner was convicted of shooting and killing Herbert Thomas on November 19, 2002, outside of a gas station and convenience store in Detroit, Michigan. Thomas had driven his van to the gas station to purchase some gasoline. Etasha Gibbs had been a passenger in Thomas' vehicle. At Petitioner's trial, Gibbs testified that Thomas had exited his van and had gone into the convenience store for about five minutes before returning to pump some gasoline. As Thomas was getting back into his van, two men approached the driver's side of the van. One of the men ordered Thomas to get out of his van, stating that he wanted the rims off of his truck. The other man was armed with a gun. When Thomas drove off, Gibbs heard two gunshots. Thomas drove for about two blocks south on Woodward Avenue, before dying. Gibbs testified that the shooting took place at about 7:45 p.m. Gibbs based her estimate of the time of the shooting based upon a clock inside of the victim's van.

Gibbs identified Petitioner as the man who had been armed with the gun. Gibbs testified that she had seen Petitioner two or three times before in the neighborhood. Gibbs further testified that she positively identified Petitioner as the shooter at a live line-up conducted subsequent to the shooting.

The prosecution introduced four photographs that were taken from the gas station's security

2

camera. The photographs were dated November 19, 2002 and had the time "21:10:09", which is military time for 9:10 p.m., stamped on them. An employee of the gas station, Lisa White, indicaed that one of the persons in these photographs looked like Petitioner. White testified that Petitioner came to the gas station "just about every day." White testified that the police arrived ten to fifteen minutes after the shooting. White further testified that she received a letter from Petitioner on Valentine's Day. In the letter, Petitioner admitted to White that he had come into the gas station on the night of the shooting, but only later, at about 10:30 or 10:55.

Officer Dammeon Player of the Detroit Police testified that he was dispatched to the crime scene at about 9:00 p.m. and estimated that the shooting occurred sometime around 8:30 p.m.

The defense called the gas station's owner, Nick Kashmika, who testified that the shooting took place around 8:00 p.m., and that the police arrived within half an hour of the shooting, between 8:45 and 9:00 p.m. Kamishka testified that before the police came, he reviewed the gas station's security tape. Kamishka testified that he could see a shot and the van driving off, but that no one was able to identify anyone from the videotape. Kamishka knew Petitioner, having seen him at the store "almost every day," but testified that he did not see Petitioner on the tape. Kamishka testified that the time on the photograph taken from the videotape might have been wrong.

Petitioner was convicted of first-degree felony murder and felony-firearm. Petitioner subsequently filed a motion for a new trial and for a *Ginther* hearing.[2] After conducting an evidentiary hearing, the trial court denied Petitioner's ineffective assistance of counsel claims, but granted him a new trial after finding that the prosecution had failed to turn over to the defense a usable copy of a crime scene videotape from the gas station's security camera.

---

[2] *People v. Ginther*, 390 Mich. 436, 443 (1973).

The Michigan Court of Appeals vacated the trial court's grant of a new trial and affirmed Petitioner's convictions. *People v. Calwise,* No. 249187 (Mich. Ct. App. Apr. 14, 2005); *lv. den.* 474 Mich. 934 (2005). Further facts will be discussed when addressing Petitioner's claims. Petitioner has now filed the instant petition for writ of habeas corpus, in which he seeks relief on the following grounds:

> I. Petitioner's due process right to a fair trial was violated by prosecutor misconduct.
>
> II. Trial counsel rendered ineffective assistance of counsel to Petitioner, in violation of Petitioner's constitutional right to counsel.
>
> III. The trial court's finding that the evidence found in the previously undisclosed tape warrants granting Petitioner a new trial was not an abuse of discretion.
>
> IV. The previously undisclosed evidence is a violation of *Brady,* and it was clear error of law for the trial court to find otherwise, especially where the trial court found that the officer in charge lied about the availability of the tape and purposely withheld it from the defense.
>
> V. Where the trial court found sufficient grounds to grant a new trial, a remand is necessary because of a question of the trial court's jurisdiction at the time of its finding and order, failure to remand this case to the trial court for a new trial would result in manifest injustice.

## II. STANDARD OF REVIEW

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> A decision of a state court is "contrary to" clearly established federal law if the state court

4

arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

## III. ANALYSIS

### A. Claims # 1(a); 3, 4, and 5. The *Brady* claim.

In part (a) of his first claim, as well as in his third, fourth, and fifth claims, Petitioner contends that the prosecutor deprived him of a fair trial by failing to turn over to defense counsel at trial a usable copy of the crime scene videotape, which Petitioner contends would have exculpated him of the murder.

On the first day of Petitioner's trial, the prosecution informed the court that the copy of the crime scene videotape in their possession was unviewable, due to a problem with the prosecutor's office equipment.

Subsequent to Petitioner's trial, Petitioner's appellate counsel filed a motion for a new trial, in which she argued that the prosecutor violated Petitioner's due process rights in failing to turn over a workable copy of the crime scene videotape, which had been in the possession of the Michigan State Police. At the hearing on Petitioner's motion for a new trial, the trial court judge ruled that this videotape should have been made available to defense counsel, "because it might make a difference." (T. 6/30/2004, p. 53). However, the trial court judge then conceded:

> "Now, very frankly, I can't say that it will [make a difference] because they've got the picture of this defendant right there at the store. Then he does a foolish thing and writes this letter to the woman and say, 'Say I wasn't there,' which is almost like an admission of guilt." (*Id.* at p. 53).

However, the trial court judge then indicated that if there was "a ghost of a chance" that this tape might make a difference in jurors' minds [then Petitioner should be entitled to a new trial]. (*Id.* at p. 54). In response to the court's remarks, the prosecutor noted that that the tape was not exculpatory, in that the tape only showed about three or three and a half minutes between the time that Petitioner was observed on the videotape and the time that the victim pulled up to the store. The trial court conceded that the tape might not make a difference because Petitioner could still have been at the store at the time of the shooting. (*Id.* at pp. 54-55). Nonetheless, the judge concluded that the "interests of justice" required granting Petitioner a new trial, even though the judge acknowledged that this might not be the standard [for granting a new trial for a *Brady* violation.] (*Id.* at p. 55). In response to further comments by the prosecutor, the trial court judge indicated that the videotape was exculpatory, because it showed Petitioner exiting the store sometime before the victim did, which was inconsistent with the witness' testimony that the two perpetrators of the crime followed the victim out of the store. (*Id.*). When the prosecutor again reiterated that the tape shows Petitioner at the store just prior to the shooting, the trial court judge indicated that this was something that the prosecutor could argue to the jury.( *Id.* at p. 57).

In affirming Petitioner's conviction and vacating the order granting a new trial, the Michigan Court of Appeals concluded that the prosecutor's failure to turn over a workable copy of the crime scene videotape was harmless error, because the tape was not exculpatory:

> The tape placed defendant at the scene of the crime a few short minutes before the shooting. It supported the eyewitness testimony that the victim drove off as the shooter fired into the van from the driver's side. The tape did not clearly implicate

6

another person as the shooter. To the extent that defendant may have used the tape to impeach eyewitness testimony, the value of the tape to his case was minimal. The tape contradicted collateral matters such as who entered and exited the crowded gas station and when those movements occurred. The fact that the eyewitness was mistaken about those details does not significantly erode her identification of defendant as the shooter. She was sitting in the passenger seat and had an unobstructed view of the perpetrator approaching the car within an arm's length, pointing a gun at the victim, and attempting to rob him before firing. The witness recognized defendant as someone she had seen in her neighborhood a few times. She immediately selected him out of a lineup. There was also testimony of an arguably incriminating letter sent by defendant to a gas station attendant.

Moreover, the eyewitness had already been impeached. The jury heard testimony about her hysterical reaction to the shooting. She was impeached particularly in regard to the time the shooting occurred. The time stamp on the tape, though its accuracy was questioned, was presented through the still photographs from the tape for the jury to consider and weigh.

*Calwise,* Slip. Op. at * 3-4.

To prevail on his claim, Petitioner must show: (1) that the state withheld exculpatory evidence and (2) that the evidence was material either to guilt or to punishment irrespective of good faith or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87 (1963). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 683 (1985).

In *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999), the Supreme Court articulated three components or essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued.

In the present case, the prosecutor's failure to disclose a usable crime scene videotape to

7

Petitioner at trial did not deprive Petitioner of a fair trial, because the contents of the videotape were not exculpatory. *See e.g. Farrell v. United States,* 162 Fed. Appx. 419, 424 (6th Cir. 2006); *Lockett v. Stegall,* 100 Fed. Appx. 360, 362 (6th Cir. 2004). The crime scene videotape placed Petitioner at the gas station only moments before the shooting. The tape does not establish that another perpetrator was the shooter. Moreover, to the extent that the contents of the crime scene videotape could have been used to impeach the credibility of Etasha Gibbs regarding who entered or exited the convenience store, there was no *Brady* violation, in light of the fact that this evidence was cumulative of other evidence that was used to impeach Gibbs and would have been only marginally relevant. *See Puertas v. Overton,* 168 Fed. Appx. 689, 696 (6th Cir. 2006). Petitioner is therefore not entitled to habeas relief on his *Brady* claim.

**B. Claim # 1(b). The prosecutorial misconduct claims.**

In part (b) of his first claim, Petitioner alleges prosecutorial misconduct.

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Dept. of Corr.*, 4 F.3d 1348, 1355-56 (6th Cir. 1993). In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Id.*

Petitioner first contends that the prosecutor asked various witnesses leading questions

8

throughout the trial. Petitioner, however, does not specify which questions were leading or offer any argument as to why such questions would have been improper under Michigan law. Conclusory allegations of prosecutorial misconduct fail to state a claim upon which habeas relief can be granted. *See Johnson v. Renico,* 314 F. Supp. 2d 700, 710 (E.D. Mich. 2004). In rejecting Petitioner's claim, the Michgan Court of Appeals found that Petitioner failed to establish some prejudice from these allegedly improper leading questions or that the prosecutor had engaged in an improper pattern of asking such questions. *Calwise,* Slip. Op. at * 4-5. In any event, Petitioner's claim that the prosecutor was allowed to ask the witnesses leading questions relates to a state rule of evidence, and federal habeas review of state court evidentiary rulings is extremely limited. *See Jordan v. Hurley,* 397 F. 3d 360, 362 (6th Cir. 2005). Because Petitioner's claim is conclusory, he has failed to show that the prosecutor's questions were improper or that he is entitled to habeas relief on this basis.

Petitioner next claims that the prosecutor denigrated defense counsel and played to the jurors' fears in his response to defense counsel's argument about how it would make no sense for Petitioner to commit a crime at a store that he had frequented for years. A review of the prosecutor's statements shows that the prosecutor was merely responding rhetorically to defense counsel's argument about common sense. The prosecutor's comments amounted to a rhetorical question or remark, which is not improper within the broad scope of a closing argument. *See United States v. Green,* 305 F. 3d 422, 430 (6th Cir. 2002). The prosecutor's rhetorical remarks were not flagrant or misleading but simply asked the jurors to make a common-sense inference from the evidence presented. *See U.S. v. Smith,* 89 Fed. Appx. 494, 497-98 (6th Cir. 2004). Moreover, even if the prosecutor's appeals to the jury's emotions or sympathies was improper, this conduct would be insufficient to render the trial fundamentally unfair, since it was likely that the nature of the crime

itself would have produced juror sympathy even before the prosecutor made any of these comments. *See Millender v. Adams,* 187 F. Supp. 2d 852, 875-76 (E.D. Mich. 2002). This portion of Petitioner's claim would also be defeated by the fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision (Tr. 4/17/2003, p. 154). *See Id., see also Welch v. Burke*, 49 F. Supp. 2d 992, 1006 (E.D. Mich. 1999).

Petitioner further claims that the prosecutor injected facts that had not been introduced into evidence.

It is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F. 3d 486, 535 (6thCir. 2000).

Petitioner first claims that the prosecutor made an improper reference to the presence of an attorney at Petitioner's live line-up, where Etasha Gibbs identified him as the shooter. However, as the Michigan Court of Appeals indicated in its opinion, *See Calwise,* Slip. Op. at * 5, a copy of Petitioner's lineup sheet which indicated that Petitioner had an attorney at the lineup was introduced into evidence. Therefore, this claim is wholly without merit.

Petitioner next contends that the prosecutor improperly argued that Etasha Gibbs told the police on the night of the shooting that she knew the shooter from the neighborhood, when no such evidence was introduced at trial. The Michigan Court of Appeals acknowledged that this comment was improper, but found that the comment did not justify reversal of Petitioner's conviction, in light of the fact that the comment was isolated and that the lawyers and the judge admonished the jury that the prosecutor's arguments were not evidence. The Michigan Court of Appeals further noted that Gibbs had testified at trial that she had seen the shooter in the neighborhood two or three times

10

prior to the shooting. *Calwise,* Slip. Op. at * 5. In this case, the prosecutor's comment was at worst an isolated misstatement which did not prejudice Petitioner, in light of the court's instruction to the jury that the lawyers' comments and arguments were not evidence. *See United States v. Martinez,* 981 F. 2d 867, 871 (6th Cir. 1992).

Petitioner has failed to show that he was deprived of a fair trial because of prosecutorial misconduct.

## C. Claim # 2. The ineffective assistance of counsel claims.

Petitioner next alleges the ineffective assistance of trial counsel. [3]

The Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984) established a two-prong test to evaluate claims of ineffective assistance of counsel pursuant to the Sixth Amendment. First the Petitioner "must show that counsel's representation fell below an objective standard of reasonableness" and thus was deficient. *Id.* at 687-88. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* Second, Petitioner must show that the deficient performance prejudiced his defense. To satisfy the prejudice prong, Petitioner must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

---

[3] The Court notes that Respondent failed to address this issue in her answer, even though she was clearly aware of Petitioner's second claim. Petitioner, however, is not entitled to habeas relief because of respondent's failure to effectively respond to this issue, because to do so "would be tantamount" to granting a default judgment to Petitioner in this case, which is a form of relief unavailable in habeas proceedings. *Alder v. Burt,* 240 F. Supp. 2d 651, 677 (E.D. Mich. 2003) (citing to *Allen v. Perini*, 424 F. 2d 134, 138 (6th Cir. 1970)); *See also Gordon v. Duran,* 895 F. 2d 610, 612 (9th Cir. 1990) (failure of state to respond to five of eight claims raised in habeas petition did not entitle habeas petitioner to default judgment on those claims). While Respondent's failure to address this issue demonstrates a lack of respect for the Court, as well as a lack of regard for the gravity of the matters raised in this case, *see Carpenter v. Vaughn,* 888 F. Supp. 635, 648 (M.D. Pa. 1994), it does not provide Petitioner a basis for habeas relief.

been different. *Id.* at 694.

Petitioner first claims that trial counsel was ineffective for failing to challenge the line-up in this case, contending that the line-up procedure was unduly suggestive, because Gibbs was told by the police that Petitioner was one of the persons in the lineup and that she was told to pick someone out of the lineup.

A pretrial line-up is not rendered impermissibly suggestive simply because a witness knows that the suspects were in custody when the line-ups were conducted. *See United States v. Bowman,* 215 F. 3d 951, 966 (9th Cir. 2000); *see also United States v. Carter,* 756 F. 2d 310, 313 (3rd Cir. 1985) (while statement by security officer to witness that there would be suspect in lineup she was about to view was dangerously suggestive when combined with one person show up, that was not true in case of a fair lineup); *Johnson v. Warren,* 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004) (same). As the Ninth Circuit has noted, "[i]t stands to reason that there *is* a suspect at the lineup stage." *Bowman,* 215 F. 3d at 966 (emphasis original). The Michigan Court of Appeals rejected Petitioner's claim by noting that, under existing law, the trial court would have denied any motion to suppress the lineup brought on this basis. *Calwise,* Slip. Op. at * 6. A trial counsel's failure to move to suppress an allegedly unreliable, in-court identification is not ineffective assistance, absent a reasonable probability that the suppression motion would have resulted in a decision to exclude the testimony. *Johnson,* 344 F. Supp. 2d at 1091. In light of the fact that Petitioner has failed to show that the lineup procedure was unduly suggestive, he has failed to evidence that his lawyer was ineffective for failing to move for suppression of the pre-trial identification. *Id.*

Petitioner next contends that trial counsel was ineffective for failing to move to have all references to the crime scene videotape stricken from the record in light of his inability to obtain and

view a usable copy of the videotape prior to trial. The Michigan Court of Appeals rejected this claim, because defense counsel did object to any mention of the tape at trial, but was overruled and the trial court "made abundantly clear that the trial would proceed regardless of the videotape issue." *Calwise,* Slip. Op. at * 6. Because defense counsel did object to any references to the videotape, this portion of Petitioner's claim is without merit.

In addition, the standard of prejudice for an ineffective assistance of counsel claim is the same as the materiality requirement for a *Brady* claim. *See Hutchison v. Bell,* 303 F.3d 720, 749 (6th Cir. 2002). In light of the fact that this Court has already determined that the undisclosed videotape in this case was not material under *Brady,* Petitioner is unable to show that he was prejudiced by trial counsel's failure to discover or utilize this evidence at trial.

Petitioner lastly contends that his counsel was ineffective for failing to present his sister, Ebony Calwise, as an alibi witness, even though counsel had listed her as a potential witness prior to trial.

Petitioner's counsel testified at the *Ginther* hearing on Petitioner's ineffective assistance of counsel claim. Counsel acknowledged that from the beginning of the case that he knew that Ebony Calwise might be an alibi witness and therefore went ahead and filed a notice of alibi. Counsel was unable to recall why he chose not to call her at trial, but indicated that he spoke with Petitioner about whether or not to call his sister as an alibi witness, as he would do with all his clients, and had Petitioner wished to her to testify, he would have called her. Counsel indicated that in his experience, alibi witnesses are often more harmful than helpful to a client. Although counsel could not testify for certain, he believed that his decision not to call Ebony Calwise as an alibi witness could have been based on the fact that he spoke with her and determined that she would not make

a good alibi witness. Counsel indicated that it was his practice in every case to interview any potential alibi witnesses. (T. 6/30/2004, pp. 23-25).

Petitioner's counsel was not ineffective in failing to call Ebony Calwise as an alibi witness, where counsel was aware of this witness and apparently knew what she would testify to and how credible she would be as an alibi witness, thus leading to the presumption that counsel's decision to omit her testimony was trial strategy. *See Cathron v. Jones,* 77 Fed. Appx. 835, 841-42 (6th Cir. 2003).

Moreover, trial counsel's decision not to call Petitioner's sister as an alibi witness was not objectively unreasonable, because she was a close family member of Petitioner's with a strong motive to fabricate an alibi defense on Petitioner's behalf. *See Ball v. United States,* No. 07-13113, 2008 WL 821067, * 3 (11th Cir. Mar. 28, 2008). As such, her "testimony would not have been particularly compelling and would have been subjected to vigorous impeachment." *See Id.*; *see also United States ex. rel. Emerson v. Gramley,* 883 F. Supp. 225, 236-37 (N.D. Ill. 1995) (counsel not ineffective in failing to call Petitioner's mother and ex-wife as alibi witnesses, because they were "patently interested witnesses" who would have added little value to the case).

Moreover, assuming that counsel was deficient in failing to call Ebony Calwise as an alibi witness, Petitioner has failed to show that he was prejudiced by counsel's failure to do so. The Michigan Court of Appeals rejected this claim, noting that Ebony Calwise's affidavit failed to provide a clear alibi for Petitioner in light of the evidence presented at trial. *Calwise,* Slip. Op. at * 7.

Ebony Calwise's affidavit indicates that Petitioner was with her on the night of the shooting between 6:00 p.m. and 9:00 p.m. However, Ms. Calwise then indicates that they were watching a

14

college basketball game that started roughly at 6:30 p.m. and lasted approximately two hours. Therefore, it is possible that Petitioner could have left his sister's house as early as 8:30 p.m. Ms. Calwise further admitted that Petitioner did go to over to the gas station on the night of the shooting, although she claimed that it was after the shooting. In this case, there were discrepancies about when the shooting occured, but based on the times on the still photographs from the gas station's security camera, it could have been as late as 9:10 p.m. In addition, Officer Player testified that the shooting took place sometime around 8:30 p.m., which could have been after Petitioner left his sister's house. Because there was a window of opportunity for Petitioner to have committed this crime even if he had been at his sister's house on the night of the crime, Petitioner was not prejudiced by counsel's failure to call her as an alibi witness. *See e.g. Fargo v. Phillips,* 58 Fed. Appx. 603, 607-08 (6th Cir. 2003).

For these reasons, the Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.

For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of Petitioner's claims

to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002). The Court will also deny Petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## IV.    CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**

                                          s/Paul D. Borman
                                          PAUL D. BORMAN
                                          UNITED STATES DISTRICT JUDGE

Dated:  June 10, 2008

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on June 10, 2008.

                                          s/Denise Goodine
                                          Case Manager